RANDOLPH L. HOWARD, ESQ.
Nevada Bar No. 006688
SHLOMO S. SHERMAN, ESQ.
Nevada Bar No. 009688
**KOLESAR & LEATHAM**
400 South Rampart Boulevard, Suite 400
Las Vegas, Nevada  89145
Telephone:  (702) 362-7800
Facsimile:  (702) 362-9472
E-Mail:    rhoward@klnevada.com
                ssherman@klnevada.com

Attorneys for Plaintiff
FEDERAL DEPOSIT INSURANCE
CORPORATION as Receiver for
BANKUNITED, FSB

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

FEDERAL DEPOSIT INSURANCE
CORPORATION as Receiver for
BANKUNITED, FSB,

            Plaintiff,

    vs.

EQUITY TITLE OF NEVADA, a Nevada
corporation,

            Defendant.

CASE NO. 2:12-cv-00829-JCM-RJJ

**STIPULATED PROTECTIVE ORDER**

## I

## PURPOSES AND LIMITATIONS

Disclosure and discovery activity in this action are likely to involve production of confidential, proprietary or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted.

Accordingly, the parties hereby stipulate to and petition the Court to enter the following Stipulated Protective Order.  The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles.  The parties further acknowledge, as

KOLESAR & LEATHAM
400 South Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

1

set forth in section XI(C) below, that this Stipulated Protective Order does not entitle them to file confidential information under seal.

## II

## **DEFINITIONS**

A.    Challenging Party:  A Party or Non-Party that challenges the designation of information or items under this Order.

B.    "CONFIDENTIAL" Information or Items:  Information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c), or otherwise stipulated to as such by the Parties.

C.    Counsel (without qualifier):  Outside counsel of Record and House Counsel (as well as their support staff).

D.    Designating Party:  A Party or Non-Party that designated information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL."

E.    Disclosure or Discovery Material:  All items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

F.    Expert:  A person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action.

G.    House Counsel:  Attorneys who are employees or a party to this action.  House Counsel does not include Outside Counsel of Record or any other outside counsel.

H.    Non-Party:  Any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

I.    Outside Counsel of Record:  Attorneys who are not employees of a party to this action but are retained to represent or advise a party to this action and have appeared in this action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party.

KOLESAR & LEATHAM
400 South Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

2

J.      Party:  Any party to this action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

K.      Producing Party:  A Party or Non-Party that produces Disclosure or Discovery Material in this action.

L.      Professional Vendors:  Persons or entities that provide litigation support services (*e.g.*, photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

M.      Protected Material:  Any Disclosure or Discovery Material that is designated as "CONFIDENTIAL."

N.      Receiving Party:  A Party that receives Disclosure or Discovery Material from a Producing Party.

### III

### SCOPE AND GOOD CAUSE

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries or compilations of Protected Material; and (3) any testimony, conversations or presentations by Parties or their Counsel that might reveal Protected Material.

However, the protections conferred by this Stipulation and Order do not cover the following information:  (1) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order, including becoming a part of the public record though trial or otherwise; and (2) any information known to the Receiving Party prior to this disclosure  (with the exception of documents produced by Equity Title of Nevada pursuant to a subpoena duces tecum issued by the FDIC on May 10, 2011 and annexed hereto as Exhibit "A," and documents previously produced by Equity in Case 2:12-cv-00829-JCM-RJJ pursuant to FRCP 26), or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the

KOLESAR & LEATHAM
400 South Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

1287609 (8408-1)

1  Designating Party.  Any use of Protected Material at trial shall be governed by a separate

2  agreement or order.

3        This action involves a contract dispute between the parties relating to mortgage loans,

4  and representations made in connection with the valuation and funding of said mortgage loans.

5  This litigation will involve the review and analysis of documents including, but not limited to,

6  Loan Origination Files, Loan Servicing Files, Foreclosure Files, and other Personal Records of

7  individuals who applied for and obtained mortgage loans at issue.  Good cause exists to grant the

8  parties' request for a Protective Order to (1) preserve the privacy interests of third-party

9  borrowers; (2) protect the confidential business records and proprietary information of the

10  plaintiff and defendant; and (3) allow the parties to exchange information in the most expeditious

11  fashion possible, with a minimum burden, expense, dispute, and delay.  Pursuant to 15 U.S.C. §

12  6802(e)(8), the production of non-public personal financial information, protected by the

13  measures set out in this Protective Order, shall not constitute a violation of the Gramm-Leach-

14  Bliley Act, 15 U.S.C. § 6801, et seq.; *Marks v. Global Mortgage Group, Inc.*, 218 F.R.D. 492,

15  496 (S.D. W.Va. 2003).

16  **III**

17  **DURATION**

18        Even after final disposition of this litigation, the confidentiality obligations imposed by

19  this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court

20  order otherwise directs.  Final disposition shall be deemed to be the later of (1) dismissal of all

21  claims and defenses in this action, with or without prejudice; and (2) final judgment herein after

22  the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this

23  action, including the time limits for filing any motions or applications for extension of time

24  pursuant to applicable law.

25  **IV**

26  **DESIGNATING PROTECTED MATERIAL**

27      A.    Exercise of Restraint and Care in Designating Material for Protection.  Each Party

28  or Non-Party that designated information or items for protection under this Order must take care

KOLESAR & LEATHAM
400 South Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

4

to limit any such designation to specific material that qualifies under the appropriate standards.
The Designating Party must designate for protection only those parts of material, documents,
items, or oral or written communications that qualify – so that other portions of the material,
documents, items, or communications for which protection is not warranted are not swept
unjustifiably within the ambit of this Order.

Mass, indiscriminate, or routinized designations are prohibited.  Designations that are
shown to be clearly unjustified or that have been made for an improper purpose (*e.g.*, to
unnecessarily encumber or retard the case development process or to impose unnecessary
expenses and burdens on other parties) expose the Designating Party to sanctions.

If it comes to a Designating Party's attention that information or items that it designated
for protection do not qualify for protection, that Designating Party must promptly notify all other
Parties that it is withdrawing the mistaken designation.

B.    Manner and Timing of Designations:  Except as otherwise provided in this Order
(*see*, *e.g.*, second paragraph of Section V(B), below), or as otherwise stipulated or ordered,
Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so
designated before the material is disclosed or produced.  The Parties expressly stipulate Equity
may designate material produced pursuant to the Subpoena annexed hereto as Exhibit "A," or its
previously provided FRCP 26 disclosures as protected.

Designation in conformity with this Order requires:

1.    For information in documentary form (*e.g.*, paper or electronic documents,
but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing
Party affix the legend "CONFIDENTIAL" to each page that contains protected material.  If only
a portion or portions of the material on a page qualifies for protection, the Producing Party also
must clearly identify the protected portions (*e.g.*, by making appropriate markings in the
margins).

A Party or Non-Party that makes original documents or materials available for
inspection need not designate them for protection until after the inspecting Party has indicated
which material it would like copied and produced.  During the inspection and before the

KOLESAR & LEATHAM
400 South Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

1287609 (8408-1)

designation, all of the material made available for inspection shall be deemed "CONFIDENTIAL." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the "CONFIDENTIAL" legend to each page that contains Protected Material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protection portions (*e.g.*, by making appropriate markings in the margins).

2.   <u>For testimony given in deposition proceedings</u>, that the Designating Party identify on the record, before the close of the deposition, hearing, or other proceedings, all protected testimony. This provision does not apply to any court hearings or trial testimony.

3.   <u>For information produced in some form other than documentary and for any other tangible items</u>, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL." If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s).

C.   <u>Inadvertent failure to Designate</u>. If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

**V**

**CHALLENGING CONFIDENTIALITY DESIGNATIONS**

A.   <u>Timing of Challenges</u>. Any Party or Non-Party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the

1287609 (8408-1)

original designation is disclosed.

B.   <u>Meet and Confer</u>.  The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge.  To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific paragraph of the Protective Order.  The parties shall attempt to resolve each challenge in good faith and must begin the process by conferring directly (in voice to voice dialogue; other forms of communication are not sufficient) within 14 days of the date of service of the notice.  In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation is not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation.  A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

C.   <u>Judicial Intervention</u>.  If the Parties cannot resolve a challenge without court intervention, the Designating Party shall file and serve a motion to retain confidentiality within 21 days of the initial notice of challenge or within 14 days of the parties agreeing that the meet and confer process will not resolve their dispute, whichever is earlier.  In addition, the Challenging Party may file a motion challenging a confidentiality designation at any time if there is good cause for doing so, including a challenge to the designation of a deposition transcript or any portions thereof.

The burden of persuasion in any such challenge proceeding shall be on the Designating Party.  Frivolous challenges, and those made for an improper purpose (*e.g.*, to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions.  Unless the Designating Party has waived the confidentiality designation by failing to file a motion to retain confidentiality as described above, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's

KOLESAR & LEATHAM
400 South Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

7

1    designation until the Court rules on the challenge.

## VI

## ACCESS TO AND USE OF PROTECTED MATERIAL

A.    Basic Principles.  A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this litigation.  Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has been terminated, a Receiving Party must comply with the provisions of Section XI(D) below (Final Disposition).

Protected material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

B.    Disclosure of "CONFIDENTIAL" Information or Items.  Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

a.    the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation;

b.    the officers, directors and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this litigation;

c.    Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgement and Agreement to Be Bound" that is attached hereto as Exhibit "B";

d.    the Court and its personnel; including the filing of documents with the Court (redacted where appropriate to preserve financial privacy and confidential proprietary information).

e.    court reporters and their staff, professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgement and Agreement to Be Bound" (Exhibit "B");

KOLESAR & LEATHAM
400 South Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

8

1287609 (8408-1)

f.      during their depositions, witnesses in the action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit "B") unless otherwise agreed by the Designating Party or ordered by the Court. Pages of transcribed deposition testimony or exhibits that may reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Stipulated Protective Order.

g.      the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

## VII

## PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL," that Party must:

a.      promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

b.      promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

c.      cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

KOLESAR & LEATHAM
400 South Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

## VIII

## <u>UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL</u>

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgement and Agreement to Be Bound" that is attached hereto as Exhibit "B".

## IX

## <u>INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL</u>

When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B).  This provision is not intended to modify whatever procedure may be established in an e-discovery order that provides for production without prior privilege review.  Pursuant to Federal Rule of Evidence 502(d) & (e), insofar as the parties reach an agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege or work product protection, the parties may incorporate their agreement in the stipulated protective order submitted to the court and seek an approval of such incorporation by the Court.  No modification to this Protective Order will have any force or effect unless and until the Court approves of such modification.

## X

## <u>MISCELLANEOUS</u>

A.    <u>Right to Further Relief</u>.  Nothing in this Order abridges the right of any person to seek its modification by the court in the future.

B.    <u>Right to Assert Other Objections</u>.  By stipulating to the entry of this Protective Order, no Party waives any right it otherwise would have to object to disclosing or producing

KOLESAR & LEATHAM
400 South Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

1287609 (8408-1)

1   any information or item on any ground not addressed in this Stipulated Protective Order.

2   Similarly, no Party waives any right to object on any ground to use in evidence any of the

3   material covered by this Stipulated Protective Order.

4        C.    Final Disposition.  Within 30 days after final termination of this case either by

5   consensual dismissal with prejudice, after final appellate review has been obtained, or after the

6   time for appeal has lapsed without the filing of an appeal by either of the parties, all material and

7   copies containing information designated CONFIDENTIAL shall be returned to the party

8   producing such information, together with any and all summaries, abstracts, notations and

9   compilations containing any Confidential Information.  In the alternative, within 30 days after

10  final termination of this case, such materials and copes may be shredded or disposed of in a

11  manner to assure the destruction thereof and declaration certifying such destruction or disposal

12  shall be provided to the party producing such information.  Notwithstanding the above, one copy

13  of the files in this case may be retained by counsel of record for each party, subject to the terms

14  of this Order.

15  Dated this 29ᵀᴴ day of November, 2012.        Dated this 27ᵀᴴ day of November, 2012.

16  KOLESAR & LEATHAM                             MEIER & FINE, LLC

17

18  _____                  _____
    RANDOLPH L. HOWARD, ESQ.                      MARILYN FINE, ESQ.
19  Nevada Bar No. 006688                         Nevada Bar No. 005949
    SHLOMO S. SHERMAN, ESQ.                       RACHEL E. DONN, ESQ.
20  Nevada Bar No. 009688                         Nevada Bar No. 010568
    400 South Rampart Blvd, Suite 400            2300 West Sahara Avenue, Suite 1150
21  Las Vegas, Nevada  89145                      Las Vegas, Nevada 89102

22  Attorneys for Plaintiff, F.D.I.C.             Attorneys for Defendant,
    as Receiver for BANKUNITED, FSB              EQUITY TITLE OF NEVADA
23

24

25

26        **IT IS SO ORDERED:**            _____

27                                         UNITED STATES MAGISTRATE JUDGE

28                                         Dated:  November 29, 2012
                                                   _____

                                        11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT "A"**

SUBPOENA DUCES TECUM ISSUED BY FDIC ON MAY 10, 2011

KOLESAR & LEATHAM
400 South Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

1287609 (8408-1)



UNITED STATES OF AMERICA
FEDERAL DEPOSIT INSURANCE CORPORATION
Washington, D.C.

| | | |
|---|---|---|
| In the matter of: | ) ) ) | SUBPOENA DUCES TECUM |
| | ) | |
| Bank United, F.S.B. (10061) | ) | |
| Coral Gables, Florida | ) ) | |

TO:     Equity Title of Nevada
        4040 S. Eastern Avenue, Suite 130
        Las Vegas, NV  89119

YOU ARE HEREBY COMMANDED to produce the documents and records described on the attached Exhibit "A".

You may comply with this subpoena by furnishing the responsive documents or records to Jennifer B. Goosenberg, Esq., Mortgage Recovery Law Group, 700 N. Brand Blvd, Suite 830, Glendale, CA 91203, (818) 630-7917, on or before June 10, 2011.

This subpoena is issued pursuant to applicable provisions of the Federal Deposit Insurance Act, 12 U.S.C. § 1818(n) and 12 U.S.C. § 1821(d)(2)(I), as amended, and pursuant to delegated authority under an Order of Investigation dated November 13, 2009.

Issued this _May 16_ , 2011

_____
Steven E. Smith
Counsel
Federal Deposit Insurance Corporation

## EXHIBIT "A"

### SCHEDULE OF DOCUMENTS TO BE PRODUCED

### INSTRUCTIONS

1.   Unless specifically directed otherwise, this subpoena covers the period from January 1, 2006 through the present.

2.   In producing documents, indicate the paragraph and subparagraph (where applicable) of the Schedule of Documents to which a produced document is responsive.

3.   In producing documents, furnish all documents known or available to you, regardless of whether such documents are possessed directly by you or your agents, brokers or salespersons, employees, representatives, investigators, attorneys or their agents, employees, representatives, or investigators.

4.   You are requested to produce original documents. If you are producing copies of the requested documents in lieu of the originals, you will be asked to state, under oath, whether the copies are true and correct copies of the original documents, and the reason for your non-production of the originals.

5.   Selection of documents from the files and other sources and the numbering of any documents shall be performed in a manner that ensures that the source of each document may be determined, if necessary.

6.   File folders with tabs or labels identifying documents called for by the Schedule of Documents must be produced intact with the documents.

7.   If any document otherwise responsive to any request was, but is no longer in possession or subject to your control or in existence, state whether it:

   (a)   is missing or lost;

   (b)   has been destroyed;

   (c)   has been transferred voluntarily to others; or

   (d)   has been otherwise disposed of.

   In each instance, explain the circumstances surrounding such disposition and identify the

person(s) directing or authorizing its destruction or transfer, and the date(s) of such direction or authorization.   Identify each document (e.g., letter, memorandum, telegram, chart, photograph, etc.) and list its author, addressees, date, subject matter, whether the documents (or copies) are still in existence, and if so, their present location (s) and custodian (s).

8.   Documents attached to each other should not be separated.

9.   Electronic records and computerized information should be produced in an intelligible format or together with a sufficient description of the system or program from which each was derived to permit rendering the material intelligible.

10.   In the event you object to the production of any document responsive to this request, list all such documents and state:

(a)   the name of each author, writer, sender or initiator of the document, if any;

(b)   the name of each recipient, addressee, or party for whom the document was intended or received, if any;

(c)   the date of the document, if any, or an estimate thereof and so indicated as an estimate if no date appears on the document;

(d)   a description of the general nature of the document and a description of the general subject matter as described in the document, or if no description appears, then sufficient other description to identify the document;

(e)   the specific privilege or objection that you contend applies to the document (e.g., "attorney-client privilege");

(f)   the grounds that you feel establish the privilege as to the document; and you are required to identify and produce any portion of the document that you do not contend is privileged.

(g)   For any and all documents not produced on grounds of privilege or other protection from discovery, submit a privilege log in which you identify the document and describe its nature in sufficient detail to enable the FDIC and the court to assess the applicability of the asserted privilege.

11.   The schedule of documents to be produced includes documents wherever located.

12.   This subpoena shall be deemed continuing so as to require additional response if you locate or obtain further responsive information subsequent to the time this subpoena is served.

## DEFINITIONS

The following definitions apply herein and to the accompanying Schedule of Documents:

13.   "Document" is used in its broadest sense and means any attempts to record or transmit information or knowledge and includes the original and all drafts of a writing, as that term is defined by Rule 1001 of the Federal Rules of Evidence, which includes, without limitation, all written, recorded, digital, graphic or photographic matter, however produced, reproduced or stored, of every kind and description in the actual or constructive possession, custody, care or control of you pertaining in any manner to the subject matter indicated, including any supplements, amendments, revisions, exhibits or appendices thereto, and includes, without limiting the generality of the foregoing, originals (or copies where originals are not available) and drafts of:  all notices, papers, letters, notes, handwritten or otherwise, memoranda, books, pamphlets, periodicals, accounts, letters, correspondence, telegrams, telexes, faxes, cables, photographs, microfilm, prints, recordings, transcriptions, blueprints, drawings, paper, books, accounts, objects, electronic or magnetic recordings or sound recordings or other memorials of any type of personal or telephone conversations or meetings or conferences, minutes of directors or committee meetings, other minutes, inter- or intra-office communications or correspondence (to include "email"), reports, studies, written forecasts, projects, analyses, contracts, licenses, agreements, ledgers, records, estimates, surveys, journals, books of account, purchase orders, invoices, vouchers, bank or cashier's checks, receipts for cashier's checks, account statements, invoices, charge slips, expense account reports, hotel charges, receipts, rate or freight bills, working papers, drafts, charts, graphs, indexes, statistical records, cost sheets, bids, abstracts of bids, price sheets, job or transaction files, discs, data sheets, data processing cards, stenographers' notebooks, calendars, appointment books, telephone slips, wire transfer slips and logs, diaries, time sheets or logs, job or transaction files, computer printouts, computer disks, compact disks, video tapes, motion pictures, or things similar to any of the foregoing however denominated by you.

14.   The term "Communication" means any exchange of information by any method of transmission, including without limitation, any person meeting, telephone call, conversation, letter, memorandum, mail, electronic mail, telegram, telex, facsimile, or any other form of communication, whether verbal or non-verbal.

15.   The terms "concern and relate to" or "concerning and relating to" any given subject means referring to, alluding to, responding to, connected with, commenting upon, in respect to, with respect to, pertaining to, about, regarding, discussing, showing, illustrating, describing, reflecting, analyzing, touching upon, constituting, or being.

16.   "Equity Title of Nevada" or any variation thereof means Equity Title of Nevada and any of its present or former officers, owners, directors, principals, members, employees, representatives, agents, attorneys, predecessors, successors, sister entities, and anyone acting or purporting to act on its behalf.

17.   "Bank United" means Bank United, F.S.B. and any of its present or former officers, owners, directors, principals, members, employees, representatives, agents, attorneys, predecessors, successors, sister entities, and anyone acting or purporting to act on its behalf.

18.   "Scott Mortgage" or any variation thereof means Scott Mortgage, Inc. and any of its present or former officers, owners, directors, principals, members, employees, representatives, agents, attorneys, predecessors, successors, sister entities, and anyone acting or purporting to act on its behalf.

19.   "Ulan Borrowers" means, individually and collectively, Fred Ulan, an individual, and Dana Ulan, an individual, and any of their current or former spouses, partners, accountants, agents, attorneys, employees, servants, predecessors, successors, or other individuals acting or purporting to act on their behalf.

20.   "Sellers" means, individually and collectively, Byron E. Kellar, an individual, and Casey C. Kellar, an individual, and any of their current or former spouses, partners, accountants, agents, attorneys, employees, servants, predecessors, successors, or other individuals acting or purporting to act on their behalf.

21.   "Ulan Property" means the real property located at 1277 Vista Del Monte Drive, Mesquite, NV 89027.

22.   "Ulan Loan" means Bank United loan number 4824058 for the Ulan Borrowers submitted by Scott Mortgage and funded by Bank United, related to the Ulan Property.

23.   "Ulan Settlement" means any and all escrow and any other closing or settlement related services performed in relation to the Ulan Property with a file number of 06480156-048 SL1.

24.   "Theresa Najemian" or any variation thereof means Theresa Najemian, an individual, and any of her current or former spouses, partners, accountants, agents, attorneys, employees, servants, predecessors, successors, or other individuals acting or purporting to act on her behalf.

25.   "Najemian Property" means the real property located at 1281 Vista Del Monte Drive, Mesquite, NV  89027.

26.   "Najemian Loan" means Bank United loan number 4824660 for Borrower Theresa Najemian submitted by Scott Mortgage and funded by Bank United, related to the Najemian Property.

27.   "Najemian Settlement" means any and all escrow and any other closing or settlement related services performed in relation to the Najemian Property with a file number of 06480154-048 SL1.

28.   "Related to" and "relating to" or any variation thereof shall be construed to include refer to, summarize, reflect, constitute, contain, embody, mention, show, comprise, evidence, discuss, describe, comment upon, concerning, regarding, alluding to, pertaining to, probative of, in connection with, dealing with, in respect of, about, involving, identifying or proving.

29.   "And" and "or" shall be construed conjunctively or disjunctively, whichever makes the request more inclusive.

30.   "All Documents" means any and all documents that might reasonably be located through a search of all locations likely to contain such documents.

31.   The term "person(s)" means all individuals and entities, and includes natural persons, firms, partnerships, associations, organizations, joint ventures, corporations, and any other entities and their agents.

32.   The singular number and masculine gender used within this document embraces and shall be read and applied as the plural or the feminine or neuter as circumstances make it appropriate.

## SCHEDULE OF DOCUMENTS TO BE PRODUCED

1.   All Documents reflecting in any way an agreement between Equity Title of Nevada and Bank United to perform the Ulan Settlement and/or the Najemian Settlement.

2.   All Documents reflecting in any way an agreement between Equity Title of Nevada and the Ulan Borrowers to perform the Ulan Settlement.

3.   All Documents reflecting in any way an agreement between Equity Title of Nevada and Theresa Najemian to perform the Najemian Settlement.

4.   All Documents reflecting in any way an agreement between Equity Title of Nevada and Sellers to perform the Ulan Settlement and/or the Najemian Settlement.

5.   All Documents reflecting in any manner Communication regarding disbursements from the Ulan Settlement and/or the Najemian Settlement, including, but not limited to, payoff statements, letters of instruction, and/or escrow demands.

6.   All Documents concerning or relating to the Ulan Loan and/or the Najemian Loan, including, but not limited to, all loan applications, disclosures, deeds, mortgages, escrow deed registers, land contracts, discharges, satisfactions, claims of interest, affidavits, closing files, wiring instructions, closing protection letters, and title assurances.

7.   All Documents reflecting in any way Equity Title of Nevada's disbursements of the loan proceeds from the Ulan Settlement and/or the Najemian Settlement, including but not limited to disbursement logs or journals, disbursement receipts, accounting ledgers, wire transfers, and both sides of cancelled checks.

8.   All Documents which pertain in any way to deposits received by Equity Title of Nevada in relation to the Ulan Settlement and/or the Najemian Settlement, including but not limited to deposit logs or journals, accounting ledgers, wire transfers, cash, money orders and checks.

9.   All Documents reflecting in any way escrow, closing, or settlement related services performed by Equity Title of Nevada for the benefit of the Ulan Borrowers relating to any real property other than the Ulan Property.

10.  All Documents reflecting in any way escrow, closing, or settlement related services performed by Equity Title of Nevada related to the Ulan Property.

11.  All Documents reflecting in any manner Communication between Equity Title of Nevada and the Ulan Borrowers concerning or relating to the Ulan Loan, the Ulan Property, the Ulan Settlement and/or Equity Title of Nevada's services relating to the Ulan Settlement.

12.  All Documents reflecting in any way escrow, closing, or settlement related services performed by Equity Title of Nevada for the benefit of Theresa Najemian relating to any real property other than the Najemian Property.

13.   All Documents reflecting in any way escrow, closing, or settlement related services performed by Equity Title of Nevada related to the Najemian Property.

14.   All Documents reflecting in any manner Communication between Equity Title of Nevada and Theresa Najemian concerning or relating to the Najemian Loan, the Najemian Property, the Najemian Settlement and/or Equity Title of Nevada's services relating to the Najemian Settlement.

15.   All Documents reflecting in any manner Communication between Equity Title of Nevada and Sellers concerning or relating to the Ulan Loan, the Ulan Property, the Ulan Settlement, the Najemian Loan, the Najemian Property, the Najemian Settlement and/or Equity Title of Nevada's services relating to the Ulan Settlement and/or the Najemian Settlement.

16.   All Documents reflecting in any manner Communication between Equity Title of Nevada and Scott Mortgage concerning or relating to the Ulan Loan, the Ulan Property, the Ulan Settlement, the Najemian Loan, the Najemian Property, the Najemian Settlement and/or Equity Title of Nevada's services relating to the Ulan Settlement and/or the Najemian Settlement.

17.   All Documents not otherwise responsive to any other document request herein, that comprise, evidence, or are included within Equity Title of Nevada's escrow file(s) and/or closing agent file(s) for the Ulan Settlement and/or the Najemian Settlement.

18.   All Documents reflecting in any manner the source of the down payment made in connection with the Ulan Loan and/or the Ulan Settlement including, but not limited to cancelled checks, wire transfers, and money orders.

19.   All Documents reflecting in any manner the source of the down payment made in connection with the Najemian Loan and/or the Najemian Settlement including, but not limited to cancelled checks, wire transfers, and money orders.

20.   All Documents concerning or relating to any complaint, inquiry or investigation concerning or relating to Equity Title of Nevada's services in connection with the Ulan Loan, the Ulan Property, the Najemian Loan, the Najemian Property and/or any transactions concerning or relating to the Ulan Borrowers and/or Theresa Najemian, by any entity, including, but not limited to: (i) local, state, or federal regulatory agencies; (ii) local, state, or federal law enforcement agencies; (iii) government-sponsored entities, including without limitation, Freddie Mac or Fannie Mae; and/or (iv) private industry oversight groups, including without limitation, the Mortgage Asset Recovery Institute ("MARI").

21.   All Documents concerning or relating to any compensation or other consideration received by Equity Title of Nevada for performing services concerning or relating to the Ulan Settlement and/or the Najemian Settlement.

22.   All Documents relating to any insurance policy that Equity Title of Nevada currently has, or has ever had, covering its closing, title, and/or escrow services, including, but not limited to,

comprehensive general liability insurance, errors and omissions insurance, and/or officers and directors insurance.

**EXHIBIT "B"**

ACKNOWLEDGEMENT AND AGREEMENT TO BE BOUND

I, _____[print or type full name], of

_____[print or type full

address], declare under penalty of perjury that I have read in its entirety and understand the

Stipulated Protected Order that was issued by the United States District Court for the District of

Nevada on November _____, 2012, in the case of *Federal Deposit Insurance*

*Corporation as Receiver for BankUnited, FSB, v. Equity Title of Nevada.*, United States District

Court, District of Nevada, Case No. CV 12-829 JCM (RJJ).

     I agree to comply with and to be bound by all the terms of this Stipulated Protective

Order and I understand and acknowledge that failure to so comply could expose me to sanctions

and punishment in the nature of contempt.  I solemnly promise that I will not disclose in any

manner any information or item that is subject to this Stipulated Protective Order to any person

or entity except in strict compliance with the provisions of this Order.

     I further agree to submit to the jurisdiction of the United States District Court for the

District of Nevada for the purpose of enforcing the terms of this Stipulated Protective Order,

even if such enforcement proceedings occur after termination of this action.

Dated: _____

City and State where sworn and signed: _____

                        Signature: _____

                        Printed name: _____

KOLESAR & LEATHAM
400 South Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

1287609 (8408-1)